# STAPLES *v.* WARREN.

BANKRUPTCY; DEEDS OF TRUST; RECORDATION OF INSTRUMENTS.

A deed of trust by a debtor, securing notes delivered by him, to secure a creditor for antecedent debts and an additional advance of money, will not be set aside as a preference at the suit of the trustee in bankruptcy of the debtor under sec. 60-b, as amended, of the Federal Bankruptcy Act, making voidable at the suit of the trustee of a bankrupt a transfer by the bankrupt of his property, if at the time of the transfer, or of its recording, if by the law recording is required, and being within four months before the filing of the petition in bankruptcy, or after its filing and before adjudication, the transferee shall have reasonable cause to believe it will effect a preference, and Sec. 499, D. C. Code (32 Stat. at L. 531, chap. 1329) providing that deeds shall take effect as to creditors, etc., without notice only from the time of recording,—where it appears that at a meeting of the creditors of the debtor, about a month before the filing of a petition in bankruptcy against him, they received actual notice of the delivery of the deed of trust and of the fact that the creditor in question was the holder of the notes it secured, although the deed of trust was not recorded until after the filing of the petition in bankruptcy, and where it also appears that the creditor had no reasonable cause to believe that the transfer was intended to give him a preference. Under such circumstances, the deed of trust will be held to have taken effect as to the creditors of the debtor, and as to his trustee in bankruptcy, as of the date when they received actual notice of it. (Distinguishing *Dulany* v. *Morse*, 39 App. D. C. 523.)

No. 3007. Submitted March 7, 1917. Decided April 23, 1917.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia sustaining a motion by the plaintiff to strike out the defendant's answer to a bill to set aside a transfer by a bankrupt as a preference, and granting the relief asked.            *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a decree in the supreme court of the District sustaining a motion to strike out the answer of the defendant, Orren G. Staples, appellant here, and setting aside a transfer of certain real estate by a bankrupt to the defendant.

The bill sets out the execution by the bankrupt, John H. Nolan, of three deeds of trust for the benefit of the appellant; that "none of the creditors of the said Nolan became such with notice of said deeds of trust, and no notice was given by the said Nolan or said Staples of their existence until after credit was extended by said creditors to Nolan;" that on the date of the execution of said deeds, July 25, 1913, Nolan was insolvent, and continued insolvent until the time of his discharge in bankruptcy; that on the 22d day of September, 1913, an involuntary petition in bankruptcy was filed against Nolan, which was followed on the 17th of October, 1913, by a voluntary petition; that these petitions resulted in Nolan being adjudged a bankrupt on the latter date; that said deeds of trust were not recorded until October 13, 1913, and that they took effect "as to creditors without notice and others interested in said property, and as to this plaintiff as trustee in bankruptcy of the estate of John H. Nolan, only from the time of their delivery to the recorder of deeds for record;" that on the 13th of October, 1913, and for a long time prior thereto, Nolan was insolvent, and the fact of his insolvency was "at the time of the recording of the said deeds of trust" well known to the defendant; that the defendant at the time when said transfer "took effect as to this plaintiff and the creditors of John H. Nolan, whom this plaintiff represents, had reasonable cause to believe that the said transfer was intended to give thereby to

the defendant, Orren G. Staples, a preference within the intent and meaning of the Bankruptcy Law."

The averments of the answer, which we must here accept, are substantially as follows: On July 25, 1913, Nolan executed the three deeds of trust here involved to secure notes aggregating $21,500, for use as collateral security for a contemplated loan. He then was indebted to the defendant in the sum of $19,000, secured by collateral of doubtful value. Within about a week Nolan interviewed Staples at the Thousand Islands, in the State of New York, and suggested that if he, Staples, would advance the additional sum of $10,000 Nolan would give as security for this additional loan and the previous indebtedness the three notes secured by the deeds of trust aforesaid. The appellant was unwilling to loan more than $2,500 without making inquiry into the sufficiency of the security offered. He therefore gave Nolan his check for $2,500, and it was agreed between them that in consideration of this advance Nolan, upon his return to Washington, would deliver to Robert J. Tracewell, Esq., who then was attorney for appellant, said notes and deeds of trust. On the 6th day of August, 1913, Nolan did deliver to Tracewell the notes and deeds of trust, upon a written agreement that they should be held until Nolan could effect an arrangement with Staples and agree upon the amount of the indebtedness, the agreement further reciting that "the purpose of said notes and deeds of trust is to secure the existing indebtedness of the said Nolan to said Staples and secure the said Staples harmless on account of any and all indorsements he has made for said Nolan and secure any and all further advances the said Staples may make the said Nolan." On September 12, 1913, at a meeting of his creditors, Nolan read a statement of his assets and liabilities, which showed assets greatly in advance of his liabilities. Before the date of this meeting the condition of the aforesaid escrow agreement had been performed, and said notes and deeds of trust had been delivered by said Tracewell to appellant, and were held by appellant on that date as security for the amount then owing to him by Nolan. At said meeting, which was attended by all the creditors of

Nolan, appellant "informed said creditors in open meeting that he held said notes and deeds of trust" and "all of said creditors then and there received actual notice of said deeds." Appellant "can neither admit nor deny that the said Nolan was insolvent on the 25th day of July, 1913, but if the said Nolan was insolvent at that time such insolvency was unknown to and unsuspected by this defendant. * .* * Defendant does not know for how long a time prior to the 13th of October, 1913, said John H. Nolan had been insolvent, and that although he now believes said Nolan was insolvent on the 13th day of October, 1913, he denies that his insolvency was at that time known to this defendant. * * * He (defendant) denies that at the time when the transfer of the property above set out took effect as to the plaintiff and the creditors of John H. Nolan, which he avers to be on the 12th day of September, 1913, that he had reasonable cause to believe that the said transfer was intended to give thereby to this defendant a preference within the meaning of the bankruptcy law, and he further denies that at the time said deeds of trust were recorded on the 13th day of October, 1913, that he had reasonable cause to believe that the said transfer was intended to give thereby to this defendant. a preference within the intent and meaning of said law."

*Mr. Hayden Johnson* for the appellant.

*Mr. William H. Sholes* and *Mr. Joseph D. Sullivan,* for the appellee.

1. Creditors who have become such between the date on which the unrecorded conveyance was executed and the date on which it was sought to be recorded, or, as in this case, notice of it was sought to be given, are protected and have priority to the lien of the unrecorded conveyance, unless it is shown that they extended credit without reliance on the ownership of the property in question. Such credits will be presumed to have been given upon the faith of ownership of property apparently unencumbered. If, therefore, the word "creditors" in sec. 499, D. C.

Code, against whom the unrecorded instrument is declared not to be effective and therefore void, means those persons who have become creditors without notice of the existence of the trust, in order for the appellant to have stated a case of defense to the bill of complaint he should have alleged in his answer not only that he had given notice of the existence of the deeds of trust in question, but that he had given such notice to the creditors before they became creditors, or that no creditor of Nolan had become such between the date of the execution of the deeds of trust and the 12th day of September, upon the faith of the apparent ownership by Nolan of the property conveyed. In other words, the bill of complaint having established a case of a void conveyance, if the defendant in his answer seeks to change the character of that transaction he must in the answer allege facts which will clearly bring him within the benefits of the defense which he sets out. See *Bank* v. *Berlin,* 26 App. D. C. 218; *Dulany* v. *Morse,* 39 App. D. C. 523; *Alexander* v. *Herbert,* 8 Cranch, 36; *Casey* v. *Cavaroc,* 96 U. S. 489; *Colbert* v. *Baetjer,* 4 App. D. C. 416; *Hume* v. *Riggs,* 12 App. D. C. 355; *Savings Bank* v. *Eisminger,* 35 App. D. C. 51; *Brown* v. *Brabb,* 67 Mich. 17.

2. The record made by the averments of the bill and answer clearly shows that the purpose for which the deeds of trust were put in escrow was never accomplished, and there was no proper delivery of the deeds to the appellant, Staples. It does not appear that Nolan and Staples ever agreed on the amount of the indebtedness, and it does not appear that Staples ever advanced the $10,000 to Nolan which was the foundation of the execution of the deed of trust, but on the contrary the only amount advanced by Staples to Nolan thereafter was the sum $1,500, separately secured.

3. There is no superior equity on behalf of the appellant, Staples, by reason of any trust in this particular fund. There was no particular trust in this fund on his behalf, but at the time when the papers were delivered in escrow on the 6th of August, they were delivered to secure an already existing indebtedness. It is apparent that he was willing to take the risk

of keeping them off record. Even conceding him to have acted in the utmost good faith, a situation is presented in which the equities of creditors claiming through the trustee in bankruptcy, who has the position of a judgment creditor in this case, are superior to any equities that he may assert. The theory of the Bankruptcy Law is to effect an equal distribution of the bankrupt's property, and while it recognizes liens given or accepted in good faith for a present consideration which have been recorded according to law it does not recognize such liens where they have not been recorded according to law. Section 67 (d) Revision 69 (d).

Mr. Justice ROBB delivered the opinion of the Court:

It is apparent that the question for determination is whether these deeds of trust took effect as to the creditors of Nolan and as to the trustee who represents them on the day of their delivery for record, that is, on October 13, 1913, or on September 12, 1913, the date when the creditors received actual notice of said deeds. Section 60-b, as amended, of the Federal Bankruptcy Act, upon which this suit is based, reads as follows: "If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by the law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any State court which would have had jurisdiction if bank-

ruptcy had not intervened, shall have concurrent jurisdiction." [36 Stat. at L. 842, chap. 412, Comp. Stat. 1916, § 9644.]

It is urged by the appellee that the decision in *Dulany* v. *Morse,* 39 App. D. C. 523, is conclusive of the question here presented. In that case an instrument in the form of a deed given as security for a loan, although executed more than four months previously, was withheld from record until the day preceding the filing of a petition in bankruptcy against the grantor, whose creditors had no notice of its existence. There was no contention that the holder of the instrument was not fully advised when he recorded it that the grantor was bankrupt. As the fact of bankruptcy then was open and notorious, it logically followed that a preference had been given within the meaning of the Bankruptcy Law. The question here in issue was not there involved and, of course, not decided.

*Carey* v. *Donohue,* 240 U. S. 430, 60 L. ed. 726, L.R.A. 1917A, 295, 36 Sup. Ct. Rep. 386, involved an interpretation of the provisions of secs. 60–a and 60–b, although the precise question here in issue was not there passed upon. The bankrupt in that case had executed a deed when insolvent, and the grantee at the time had reasonable cause to believe that the transfer to him would effect a preference, it being in payment of an antecedent debt. The deed was not recorded until within four months of the petition in bankruptcy. The question involved, therefore, was whether the deed was one which was "required" to be recorded within the meaning of the Bankruptcy Law. If it was not, there could be no recovery, as it was executed and delivered more than four months before the petition in bankruptcy was filed. If it was "required" to be recorded in the sense of the statute it was voidable, as the recording was within the four months' period, and the other conditions of recovery were satisfied. The provisions of the Ohio Code governing the recording of the deed declared that such deeds should be deemed fraudulent, "so far as relates to a subsequent bona fide purchaser having, at the time of the purchase, no knowledge of the existence of such former deed or instrument." The court found that under the Ohio decisions there was no require-

ment that this conveyance should be recorded in order to give it validity as against any creditor of the bankrupt, whether a general creditor or lien creditor, or a judgment creditor with execution returned unsatisfied, "that is, as against any class of persons represented by the trustee, or with whose 'rights, remedies, and powers' he was to be deemed to be vested." The trustee claimed that the provision in the interest of subsequent bona fide purchasers constituted a requirement of recording which entitled a trustee to recover for the benefit of creditors. After a careful analysis of the section involved and the divergent views of the circuit courts of appeals with reference to it, it was said: "As Congress did not undertake in sec. 60 to hit all preferential transfers, otherwise valid, merely because they were not disclosed, either by record or possession, more than four months before the bankruptcy proceeding, the inquiry is simply as to the nature of the requirement of recording to which Congress referred. The character of the transfer itself, both with respect to what should constitute a transfer and its preferential effect, had been carefully defined. It is plain that the words are not limited to cases where recording is required for the purpose of giving validity to the transaction as between the parties. \* \* \* The natural and, we think, *the intended meaning was to embrace those cases in which recording was necessary in order to make the transfer valid as against those concerned in the distribution of the insolvent estate;* that is, as against creditors, including those whose position the trustee was entitled to take." (Italics ours.) As the requirement of the Ohio statute was wholly in favor of subsequent bona fide purchasers without notice, the court held that there could be no recovery by the trustee.

This brings us to an examination of sec. 499 of the local Code [32 Stat. at L. 531, chap. 1329], which reads as follows: "When deeds to take effect.——Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as aforesaid and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of

the delivery thereof, except that as to creditors and subsequent *bona fide* purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the recorder of deeds for record."

This section differs from the Ohio statute in that creditors are within its protection. There is no doubt, of course, that as to creditors without notice a deed takes effect only from the time of its delivery for record, but the question is, when does it take effect as to creditors with notice? In other words, is the same effect to be given actual notice as the statute clearly gives to constructive notice? Had appellant recorded these deeds on September 22d, the day when actual notice was given the creditors, it is not disputed that they would have taken effect from that date, and unless it could have been made to appear by the trustee that the conditions for recovery then existed, the transfer would have stood. Of course, such record is as effective against existing creditors as it is against future creditors. The Bankruptcy Law, in effect, merely declares that all creditors shall have four months from the time when such a deed takes effect within which to assert their rights. That is to say, under the Bankruptcy Law, if the equities of other creditors are equal to those of the grantee, they may be asserted and enforced by appropriate proceedings within the four months' period. The recording of the deed is merely constructive notice of its existence, and we see no reason for holding that actual notice shall be less effectual than constructive notice. It is plain that under the decision in *Carey* v. *Donohue*, to which we have referred, the delivery of these deeds for record was not a prerequisite to their validity as against creditors having actual notice of their existence. And if actual notice was to take the place of constructive notice, we think it should be given the same effect. It was open to creditors, within four months of the date of this notice, to assert and enforce their equities, provided they could satisfy the court of the existence of the requisite conditions; and unless those conditions existed on the date of notice, the date when the deeds became effective as to such creditors, there

was no more reason for challenging those deeds than any other instrument recognized by the law. This interpretation is consistent not only with the language used in sec. 499, but with the general rule that the object of recording statutes is to furnish means of notice. After a deed has been recorded under the provisions of sec. 499, no one can be heard to say that he did not have notice of it, and yet it is insisted that it was intended by this statute to give the recipient of actual notice greater rights than would have resulted from mere constructive notice. Record is required as to those without and not as to those with notice, and notice takes the place of record in substance as well as in form.

Some criticism is aimed at the answer, on the ground that it does not go far enough. In our view it goes farther than the averments of the bill, and that should be sufficient. In the bill it was alleged merely that the defendant, on October 13, 1913, had reasonable cause to believe the transfer was intended to give him a preference. The answer denies this averment and also denies that the defendant, on the 12th day of September, 1913, had reasonable cause to believe the transfer was intended to give such a preference.

The decree is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*